I'm Robert Jobe and I'm appearing today on behalf of the petitioner Sukhvinder Singh. At the outset I need to say that the parties have a fundamental dispute about the nature of this court's review. The immigration judge gave four reasons to support his negative credibility finding in this case. I think implicitly conceding that those four grounds are insufficient. They don't constitute substantial evidence. The government has provided the court with a litany of other justifications upon which the immigration judge did not rely. The government argues that the court should uphold the immigration judge's negative credibility finding on those other grounds. By way of example, Mr. Singh testified, and this is on page 102 of the administrative record, that following his March 1992 arrest he was on the ceiling and he said, it broke my arm. Broke was the word that he used. Now the government contrasts that with the medical examination that was prepared by Dr. Ami Laws, a physician at Survivors International, in which Dr. Laws says that there is compelling evidence, she says, of torture here, but she says that the injury to his arm appears to be an injury to soft tissues only, specifically the elbow ligaments. So they contrast his testimony that my arm was broken with her expert testimony that, well, the injury appears to be the soft tissues, specifically elbow ligaments, and they say this is an inconsistency. Well, I don't think it's an inconsistency. Obviously, one's a medical doctor, one's a layman, and they describe things in different terms. But the important point here is that this is not an inconsistency upon which the immigration judge relied. And for the court to affirm the immigration judge on grounds that the immigration judge himself found unpersuasive, it would be improper. And, in fact, it would be a violation of the recent Supreme Court holding in INS v. Ventura. Was Dr. Laws available? I see that the hearing was continued at least on two occasions. Yeah. And is she in the Stanford community? She's at Stanford, yeah. I'm an attorney here. I do these sorts of cases all the time. I use her all the time. She's a Stanford assistant professor and she does volunteer work at Survivors International. In this particular case, the case was postponed repeatedly. I got to say this man's attorney was a bumbler, an absolute bumbler. By the time this thing had been continued, I don't know, three or four times, the attorney admitted to the immigration judge that he'd never even spoken with Dr. Laws. Mr. Singh, the petitioner, had been referred to Dr. Laws not by the attorney who represented him at this hearing, but by a former attorney named Dr. Laws. Her presence would have been significant in substantiating the claim that Supervendor Singh had been the victim of torture in his home country. Absolutely. Yeah, I mean, her evidence is compelling. I mean, she herself uses that word that there's compelling medical evidence to substantiate the claim. I think the immigration judge did err in refusing to consider the document. Certainly, you know, he has discretion to decide whether to... There was some ambiguity about that, because there were several statements, and one of the statements was, I'm not going to give it much weight, which may be appropriate given the steps that were taken by the judge to make provision for Dr. Laws to appear. Yeah, I absolutely agree with the distinction there, and you're right, that sometimes he says, I cannot give it any weight, and at other points he says, I will not. But he says, I cannot and will not at least a couple of times, I think, in the record, and it seems to me that the immigration judge is under the erroneous belief that if Dr. Laws is unavailable, then he can give no weight as a matter of law to the medical examination that she prepared. You know, Mr. Chilton, that kind of claim, I mean, suppose, I think it is ambiguous, but suppose we conclude that it was excluded, and it was, I think the standard is, you know, abuse of discretion, right, to exclude it now. In order for us, though, to really reach it, I mean, do we have to get to the point where we say, well, it's a denial-of-due process? No. I actually don't think you have to reach that question, because it's probably only prejudicial, the exclusion of the medical report, if, in fact, there's substantial evidence to support the immigration judge's negative credibility finding. Credibility issue. Because that's the primary issue here, isn't it? Yeah. Because if there's not, then we accept the facts of that testimony, or this testimony is true, and the medical exam becomes duplicative or superfluous. Another example that the Immigration Service relies on is the dispute about whether Mr. Singh saw a doctor. In his testimony, Mr. Singh said that following his first arrest, he was not taken to the hospital, but he was treated by a traditional Indian medicine practitioner, something called a hakim. Dr. Laws, in her report, says that he reported he did not see a doctor. And the government says, well, these are inconsistent statements. Well, they're obviously not inconsistent. He didn't see a doctor. He saw a traditional Indian practitioner known as a hakim. Again, this is not something that the immigration judge relied upon, and it's not a basis upon which this court could affirm the immigration judge's conclusion that Mr. Singh lacks credibility. The only one of the four reasons that the immigration judge set forth that I really want to talk about here today, because I believe the others are covered pretty well in the brief, is the issue of the photographs. The immigration judge said that there are serious questions as to the petitioner's identity because he admittedly sent photographs from the United States to India so that people in his village could prepare documents to confirm his identity, the village panchayat, like the city council, and the leadership at his Sikh temple. This testimony is on pages 127 through 129, because the only real issue here, it seems to me, is was he consistent or not? If he was consistent in presenting his testimony on this point, I frankly don't see how it affects his credibility, because he was being very forthright in saying, I sent the pictures to them so that they could create documents to confirm my identity. I wanted a picture on it, because otherwise it's not nearly as useful. On page 127, he was asked, who gave them, the preparers of these documents, the photograph? And he says, according to the court translation, I had them taken here and I had them sent there. And that's the crucial statement. The follow-up question is, oh, so you took the pictures, your picture was taken here, sent back to India, and then they issued you identity cards. But immediately at that point, Mr. Singh clarifies, and he says, no, the picture that was used was those that were taken in India. They were not taken here. And he continues to say that throughout his testimony. There is, in the record, an apparent inconsistency between that first answer, but it's immediately clarified when he says, no, actually, the pictures were sent from here, but they were taken in India. I brought them with me. And this continues on to page 128, and the judge is insisting, well, didn't you say that the pictures were taken here? And in the middle of page 128, this is at line 15, he says, no, no, the pictures were with me. I mean, this is a classic example of miscommunication in immigration court. We see this all the time. It's, he, you know, the translation came out one way, but in the very next statement, he clarified that answer, made clear that the pictures had been taken in India, and he brought them with him to the United States. That's not the kind of inconsistency upon which we can base a negative credibility finding. It doesn't justify returning a man who claims his life is in danger to a country from which he fled. I'll reserve the balance of my time. All right. Fine, Mr. Job. Thank you. We'll hear from the government. May it please the Court. My name is Lisa Watts, and I represent the Attorney General in this case. The question at issue in this case is whether the record compels the conclusion that Mr. Petitioner revealed that he was not. Accordingly, his motion for review in this court must be denied. There were material inconsistencies in his testimony that go to the heart of his claim. In particular, in direct testimony, Petitioner described his first arrest in March of 1992, where the police accused him of speaking against the government, and that's in the record at page 100. Specifically denied speaking against the government during that portion of his testimony. However, later in the record, when questioned by the immigration judge as to why he was arrested in March of 1992, then he explains that he was giving a speech in front of 500 or 600 people, and that he was, quote, unquote, advocating a civil disobedience, and that's at 113.14 in the record. In addition, this entire speech is absent from his asylum application. Mr. Tseng additionally gave two separate reasons for why he was seeking asylum by the government. In the September 1997 hearing, when asked why he was seeking asylum, he indicated that the Sikhs wanted to separate from India because the government did not sell their crops, and that's in the record at AR 78 and 79. However, in the December 1997 hearing, Mr. Tseng claimed that he was seeking asylum because he was beaten by the Punjab police, and that's at AR 9394. In addition, counsel for petition had referred to Dr. Law's report. In Mr. Tseng's primary testimony in December 1997, he indicated that in this first arrest in 1992, in March of 1992, he was held for three days and beaten more than once over that time. In Dr. Law's recitation of his history, he indicates he was only held for one day, beaten and held overnight. These are material inconsistencies that go to the heart of Mr. Tseng's testimony. In addition, within this context of inconsistencies and omissions between Mr. Tseng's testimony and his asylum application and other documents, there were some questions regarding his identity. In particular, there were three identity cards that were in Mr. Tseng when he was living in the United States, using, apparently, photos that he had brought with him to the States and then sent back to India. Now, apparently, he solicited the documents with the assistance of his parents. The documents, when he received them, indicated, number one, that he was still a student, despite the fact that he had been in this country for one to two years at the time, and presumably his parents knew that not only was he gone, but he was no longer a student. And number two, the issue with the identification cards is relevant and important because the work permit identification card, which is in the record, shows Mr. Tseng with a clean haircut, shaven, and not wearing a turban. Now, that in and of itself would not be dispositive of Mr. Tseng's claim, and I'm not arguing that it is. However, it begs the question of why Mr. Tseng chose to send the photographs of him that were several years old back to India to procure the identification cards, and perhaps not his work permit card. It, at the very least, it shows that at one time, and I recognize that he had testified that he had some skin problems and, therefore, was necessitated to have his hair cut. That doesn't explain why he wasn't wearing a turban. And, again, that's not dispositive, but when considered in the context of this record, the whole record that was present before the immigration judge when the decision was issued, there is no evidence in this record that could compel a contrary finding. Secondly, the ---- Just a minute now. When you talk about compelling a contrary finding, that reminds me that you heard Mr. Job's argument that to a certain extent the government relies upon matters not relied on by the I.J. in support of his lack of credibility finding, and that it's the Petitioner's position that that's contrary to Ventura. Now, you seem to somewhat take a different position in this footnote 5 in your brief, but isn't it true that we can't affirm on a basis other than that advanced by the immigration judge under Ventura? I believe that's correct. But in this case, there were specific material inconsistencies in Mr. Seng's claim that weren't discussed by his counsel here. It's those inconsistencies in the context of this claim which found the basis for the immigration judge's adverse credibility determination. In this case, was there a serious issue as to whether Mr. Seng was in fact who he said he was, or did the confusion over the photos create some other issue about his claim? From the record, it appears to be a mixed issue, because obviously there were points in time when the government took this man's fingerprints. I think the issue was both, a little bit of whether he was who he said that he was, and other issues ancillary to how he received and solicited his identification documents, and quite frankly, the fact that he had none other, that he had traveled to this country, he had no passport, nothing else to show, no background school information, nothing else to show the immigration court at that time. A second admittedly lesser reasoning rationale within the immigration judge's opinion in this case is his or her acknowledgment of the background country conditions, which were admitted within the September 1997 hearing and discussed at length by counsel and the court, that Mr. Seng would not have a well-founded fear of future persecution should he be returned to India. In point, the immigration found that in this case, and I quote, I do not find that the Respondent's allegations demonstrate any reasonable possibility that he would be harmed or threatened if returned to India at this time. And that's in the record at AR 32. I saw that, but I wasn't entirely sure what it was based on. If you separate that out from the adverse credibility finding and accept that this testimony is true, then he would seem to qualify as a victim of past persecution from which you could presume the possibility or the fear of future persecution. What specifically is identified by the immigration judge as rebutting that presumption? Well, the immigration judge, I believe, made a primary ruling that Mr. Seng was not credible. I understand that, but if you go past the credibility ruling, is there an independent conclusion here that could be sustained? The immigration judge did not say the magic words that there either was or, quite frankly, was not past persecution in this case. That reminds me of another issue, then. Hypothetically, at least at this stage, if the panel were to conclude, right, that substantial evidence doesn't support the credibility or the lack of credibility finding, then I guess we should remand, right, for the I.J. or the board to look at those matters? Well, there can always be an implicit argument here that the immigration judge implicitly found in that hypothetical, assuming that the petitioner is credible, that he had established. Because if the immigration judge theoretically had accepted this testimony, that might have established past persecution. And then he went to the second or she went to the second portion, which was whether this was well-founded at this time in the context of additional evidence that was provided by the government. But in this case, there's nothing about circumstances on the ground in India that, as a general proposition, suggested that this person's claim of fear of future persecution was unreasonable. Is there? I'm sorry. I don't believe I understand your question. Was there any evidence that circumstances in India have changed with regard to persons of Mr. Singh's religious beliefs? Oh, there was volumes of evidence. And in particular to Mr. Singh's case, he had acknowledged that he was not, he didn't hold an office within the IASSF. He considered himself a nominal, normal member. And in the record at 246, the reports indicate that low-level members of the AISSF and other Sikh organizations are not at risk anymore. There are several other quotations that go to life in the Punjab currently. And those are in the record. And if you'd like me to provide them, I could. All right. You can see you're well over your time, right? Yes. Substantial evidence supports the immigration judge's finding, in particular that Mr. Singh was not credible. We ask that you deny the petition for review here. Thank you. All right, Ms. Watts. Thank you. Mr. Job, a rebuttal? Just very quickly. First off, with regard to the statement in the immigration judge's decision that respondents' allegations don't demonstrate any reasonable possibility that he harmed or threatened, frankly I don't think that provides a reason that's subject to judicial review because I don't know what it means. There's no mention in here or discussion about whether the petitioner established past persecution. There's no mention whatsoever of the regulatory presumption of future persecution that would arise upon a showing of past persecution. I personally think that what he's saying here is that this testimony needs to be corroborated. Even if we find that his testimony is credible, I find that he failed to meet his burden of proof because these allegations are not corroborated. And I base that on the fact the only case that the judge cites in this decision is matter of DOS, which is a case all about corroborating credible testimony. On this issue about whether remand is appropriate, yeah, remand is absolutely appropriate in the context of this case for two different reasons. I mean, first, as I was just saying, the immigration judge made no finding about past persecution, didn't apply the presumption of future harm that would arise upon a showing of past persecution, and the agency needs to do that in the first instance. On the issue about whether or not the presumption could be rebutted or not, again, it hasn't been decided by the agency so it's not an issue before this court, but I would point out that the report prepared by the Immigration Service and presented by the Immigration Service to the immigration judge in this case says, quote, an individual picked up in the past might still be at risk, unquote. That's on page 247 of the administrative record. And that's a document that was prepared by the Immigration Service's Resource Information Center, a documentation center that they use in processing their own asylum claims. Thank you. Okay. Thank you. We thank both counsel in this case. It's now submitted for decision. Next case on the argument calendar is, let's see, that was Sukhvinder Singh. So it must be Sukhvinder Singh.
judges: Tashima, Clifton, Leighton